IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY CLEVEN,

                 Plaintiff,               OPINION AND ORDER

   v.                                               16-cv-421-wmc

PAUL SOGLIN, CITY OF MADISON,
and DAVID SCHMIEDICKE,

                 Defendants.

---

Plaintiff Gary Cleven, a former stagehand, sued the City of Madison and two of its employees in their official capacity, claiming that the City's failure to report his back hours and wages to the Wisconsin Retirement System amounted to a constitutional taking and violation of due process. Before the court are the parties' cross-motions for summary judgment.[1] (Dkt. ##20, 24.) Because of its lengthy factual and procedural history, this case presents a variety of constitutional issues, not least being this court's exercise of jurisdiction in light of ongoing state proceedings. For the reasons discussed below, the court will grant summary judgment in part to defendants and dismiss the remainder of this case for a lack of ripeness.

BACKGROUND[2]

Plaintiff Gary Cleven worked as a stagehand at various venues operated by defendant City of Madison between 1980 and December 31, 2016. As a municipal corporation, the City

---

[1] Plaintiff did not oppose dismissing his claims against the individual defendants. (*See* Pl.'s Opp'n (dkt. #44) 18). Additionally, plaintiff did not oppose defendants' arguments for summary judgment on his substantive due process claim. (*See id.* at 14; Defs.' Reply (dkt. #49) 2.) As such, the court will grant summary judgment to defendants on these claims.

[2] The following facts are material and undisputed for purposes of summary judgment except as noted below.

is a Wisconsin Retirement System ("WRS") participating employer. Defendant Paul Soglin is the Mayor of Madison, and defendant David Schmiedicke is the city employee responsible for determining and reporting WRS eligibility.

During the course of Cleven's employment, he was originally categorized as an independent contractor and then later as an employee of the City. As of January 1, 1983, Cleven would have worked enough hours to be eligible for enrollment in the WRS, but for the City considering him and other stagehands to be independent contractors at the time, making him ineligible to participate. This not only meant that during this period Cleven was unable to set aside his own earnings (his employee contribution) in what has proved to be a very successful retirement fund, but did not receive the contributions by the City (the employer contribution).

Following a petition by Local 251 for an election whether stagehands wanted to be represented by the union for collective bargaining purposes, the Wisconsin Employment Relations Commission ("WERC") in 2004 determined that stagehands working at Madison venues were City employees, not independent contractors. After WERC reiterated this determination in January 2007,[3] Local 251 began negotiating with Madison as the stagehands' certified collective bargaining representative in 2007. Those negotiations included whether the stagehands were eligible to participate in the WRS.

Eventually, the City agreed to report Cleven for enrollment in the WRS on December 27, 2009, designating him as a participant starting on January 1, 2010. However, the hours

---

[3] Defendants do not dispute these facts, but assert that the legal impact of the WERC decisions are limited to the stagehands' rights to collective bargaining only.

2

he worked between 1983 and 2009 were not reported at that time. Between January 1, 1983 and December 31, 2009, Cleven worked 46,286.49 hours and earned $830,112.24.

Cleven appealed to the Department of Employee Trust Funds ("ETF") on July 26, 2010, seeking an earlier enrollment date in the WRS. The presiding administrative law judge's proposed decision required that Cleven be enrolled as a participant as of January 1, 1983. This decision appears to have been reviewed by the ETF Board, which issued a March 11, 2013, decision that: (1) stagehands, including Cleven, were employees who should have been reported to WRS; (2) Cleven qualified as a City employee as of January 1, 1983, and should be enrolled as of that date; and (3) it did not have the equitable power to force the City to pay into the fund the past due WRS employee contributions.

The Board's decision was challenged by stagehands on April 9, 2013, through a certiorari action to the Dane County Circuit Court. The parties dispute the extent of Cleven's personal involvement in that lawsuit before it was dismissed for failure to comply with statutory requirements in March 2014.[4] This dismissal was appealed to the Wisconsin Court of Appeals and then to the Wisconsin Supreme Court. The Wisconsin Supreme Court denied the petition for review on May 15, 2015.

Cleven then brought a mandamus action in the Dane County Circuit Court on June 9, 2015, seeking an order requiring the City and Schmiedieke to report his hours and wages from 1983 through 2009. In April 2016, the circuit court required the City and Schmiedicke to "immediately (with all reasonable dispatch) report Plaintiff[] Gary Cleven's hours of work and

---

[4] From review of the docket in that case, the "additional text" for the decision and order reads "on respondent's motion to dismiss; motion to enlarge time to serve writ is denied, and respondent's motion to dismiss is granted." (*Furrillo* Docket (dkt. #12-2) 2.) To avoid confusion, as before, citations to "dkt." are citations to documents appearing on this court's docket.

3

wages to the WRS so Cleven can be enrolled as a participating employee as of January 1, 1983." (Defs.' Resp. to Pl.'s PFOFs (dkt. #43) ¶ 32.) After that court denied the City's request for a stay, the City backdated Cleven's enrollment to January 1, 1983, and reported his hours and earnings to ETF on June 6, 2016. On July 15, 2016, the City was invoiced $377,438.17 for the employer and employee contributions for plaintiff, including nearly $300,000 in accrued interest charges. (*Id.* at ¶ 36.)

In August 2016, the City sought to add Cleven and the ETF as third-party defendants in *Gersbach et al. v. City of Madison et al.*, No. 16-cv-1269 (Dane Cty. Cir. Ct.). Cross motions for summary judgment regarding liability for the employee contribution and interest to the WRS remain pending in that case. (*See Gersbach* Docket (dkt. #54-14) 4-5.)

Cleven retired on December 31, 2016, and received his first annuity payment in February 2017, the calculation of which included hours and wages from January 1, 1983. However, he now claims that he would have retired from City employment on December 31, 2011, when the City ceased operations at the Overture Center, but was unable to do so because the City had only enrolled him in the WRS on December 27, 2009. As a result, Cleven then had only 1.94 years of recognized service to the City, making him ineligible for monthly retirement benefits. According to the WRS, had the City reported his hours and wages back to January 1, 1983, Cleven would have been entitled to a $1,678.90 monthly annuity payment under the 180-month guaranteed option if he had retired effective January 1, 2012. Cleven further alleges that if he had been eligible to start receiving retirement benefits at the start of 2012, his wife would have been able to max out allowable contributions to her own deferred compensation plan from 2012 through 2016. The parties dispute whether this latter action would have resulted in at least a $250,000 gain for the Clevens.

OPINION

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("By its very terms, [the summary judgment] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."). Consistent with the parties having cross moved for summary judgment, the court has identified no genuine material factual dispute, and will, therefore, proceed to rule on the legal issues before it. *See id.* at 249-50.

I. Takings Claim

The Takings Clause of the Fifth Amendment prohibits "private property [from] be[ing] taken for public use, without just compensation," U.S. Const. Amend. v, and applies equally to personal and real property. *Horne v. Dept. of Agric.*, 135 S.Ct. 2419, 2425 (2015).[5] To establish a takings claim, therefore, a plaintiff "must show that the government, by some specific action, took a private property interest for a public use without just compensation." *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 294 (1981)). Importantly, not every state-caused deprivation constitutes an unconstitutional taking. *Compare* U.S. Const. Amend. v ("nor shall private property be taken for public use, without just compensation") *with id.* ("nor be deprived of life, liberty, or property, without due process of law"); *see Porter v. DiBlasio*, 93 F.3d 301 (7th

---

[5] The Takings Clause has been incorporated against the states by the Fourteenth Amendment. *CEnergy-Glenmore Wind Farm #1 v. Town of Glenmore*, 769 F.3d 485, 487 (7th Cir. 2014).

5

Cir. 1996) (no takings claim because seizure of neglected horses fell within the police power of the state, which was a deprivation not warranting compensation under the Takings Clause).

Assuming for purposes of summary judgment that plaintiff Cleven's retirement account in the WRS constitutes a vested property right, plaintiff's takings claim fails for a lack of ripeness. Even if his claim were ripe, plaintiff will face significant hurdles on any renewed takings claim, which are also briefly alluded to here, should he wish to pursue such a claim after all state proceedings conclude.

### A. Ripeness

Because the Takings Clause proscribes takings *without just compensation*, a claim will not typically accrue until the government refuses to pay. *Kolton v. Frerichs*, 869 F.3d 532, 533, 535 (7th Cir. 2017) (citing *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)). A plaintiff must generally seek out compensation under state law before bringing a federal takings suit, but as clarified by the Supreme Court "*Williamson County* 'is not, strictly speaking, jurisdictional.'" *Id.* at 533-34 (quoting *Horne v. Dept. of Agric.*, 133 S.Ct. 2053, 2062 (2013)). As such, it "does not diminish federal courts' adjudicatory competence." *Id.* However, where it is not predetermined what a state court would do if confronted with the plaintiff's claim, the plaintiff should proceed first in the state court. *Id.* at 535.

Here, plaintiff is proceeding in state court presently in *Gersbach v. City of Madison*, albeit as a third-party defendant, where the parties dispute liability for the employee contribution for Madison stagehands. On May 11, 2016, four stagehands sued the City and Schmiedicke seeking a writ of mandamus requiring the defendants "to immediately report them to the WRS

6

as a participating employee" as of specified dates.[6] (*Gersbach* Docket (dkt. #54-14) 10; *Gersbach* Pls.' June Mot. Summ. J. (dkt. #54-2) 1.) The City asserted a counterclaim against the plaintiffs on May 31, 2016, seeking a judgment "for the amount of the employee contribution together with all applicable interest (including BAC)." (*Gersbach* Docket (dkt. #54-14) 9; *Gersbach* Defs.' July Opp'n (dkt. #54-3) 2.) On September 30, 2016, the court added Cleven as a third-party defendant.[7] (*Gersbach* Docket (dkt. #54-14) 7.)

Because Cleven was added after the parties had filed their original motions for summary judgment, new motions were filed. (*See generally id.* at 8-9.) The pending summary judgment motions center on the responsibility for paying the employee contributions to the WRS, with both sides pointing fingers at each other. Specifically, the City argues that the stagehands must pay the employee contribution and interest, while the stagehands argue that they should not have to pay and that the City cannot collect. (*See generally*, City's Apr. Summ. J. Br. (dkt. #54-4) 17-35; Pls.' & Cleven's Resp. (dkt. #54-10) 15-26; City's Reply (dkt. #54-11) 10-20; Pls.' Apr. Mot. Summ. J. & Supp. Mem. (dkt. #54-6) 21-23, 29-40; City's Resp. (dkt. #54-9) 49-61; Pls.' & Cleven's Reply (dkt. #54-12) 1-10.)

In a footnote, the City notes that "[t]he takings case involves different legal claims and defendants and the City's lawyer in this case is not the lawyer making arguments in the takings case." (City's Reply (dkt. #54-11) 11 n.2.) While technically true, the resolution of the state

---

[6] Technically, three stagehands and the estate of a former stagehand brought suit. (*See Gersbach* Docket (dkt. #54-14) 1.)

[7] In the state court filings, the parties refer to themselves and each other inconsistently. For instance, the City and Schmiedicke are referred to as both "defendants" and "counter-plaintiffs," while the stagehands are referred to as "plaintiffs," "counter-defendants," and "defendants." For the sake of simplicity, the City and Schmiedicke will be referred to as only the "defendants," the plaintiffs will be referred to only as the "plaintiffs," and Cleven as either "Cleven" or "third-party defendant," even though as a practical matter, the only remaining claim is the City's counterclaim and third-party claim against the stagehands and Cleven, as set forth above.

7

court proceedings would impact the claims here. Specifically, the state court can decide who is liable for the employee contributions and interest. Likewise, it may remedy his takings claim. It may also moot his requests to be held harmless regarding the interest and for an injunction preventing the City from trying to collect from him. Moreover, it does not appear that Cleven will have to wait interminably, since the Dane County Circuit Court announced last week that it would issue an "[o]ral ruling on October 26, 2017 at 01:30 pm." *Gersbach v. City of Madison*, No. 2016CV1269, available at https://wcca.wicourts.gov/caseDetails (last visited October 12, 2017).

There is no indication how the state court will rule and Cleven has likewise pointed to nothing suggesting that relief through the state court process would be unavailable to him. Even if otherwise ripe, therefore, the court is inclined to defer to that court as a matter of comity before considering plaintiff's takings claim here.

### B. Apparent Flaws in Plaintiff's Takings Claim

Even if the court could permissibly take up plaintiff's takings claim without further state court action, it at least bears pointing out that plaintiff still has a number of formidable hurdles to overcome, particularly should he ultimately seek relief in federal court.

Takings claims "will not lie where the government, as a party to a contract, acts in its proprietary, as opposed to its sovereign capacity." *Comsys Inc. v. City of Kenosha*, No. 16-cv-655-JPS, 2017 U.S. Dist. LEXIS 70518, at *48-*49 (E.D. Wis. May 9, 2017). In particular, where the government acts within its rights under a contract -- and does not rely on administrative or legislative action to repudiate a contract obligation or to impair the counterparty's ability to enforce its rights, the government is acting within its propriety

8

capacity. *Cannon v. Forest Preserve District of Cook County, Ill.*, No. 14 C 5611, 2016 WL 2620515, at *5 (N.D. Ill. May 9, 2016) (rejecting takings claim where state actor "was acting as a private party and not in its sovereign capacity" where it had acquired property through mortgage purchase and foreclosure), *appeal docketed and argued*, Case No. 16-3131 (7th Cir.); *Janicki Logging Co. v. United States*, 36 Fed. Cl. 338, 346 (Fed. Cl. 1996) ("[R]ather than acting as a sovereign and taking plaintiff's property for public use, the Forest Service acted in a proprietary capacity as a party to a contract and purported to exercise its rights for which it bargained in the contract."), *aff'd* 124 F.3d 226 (Fed. Cir. 1997) (unpublished table decision).

Additionally, an alleged delay in the receipt of benefits does not give rise to a takings claim. *See Clifton v. Schafer*, 969 F.2d 278, 283 (7th Cir. 1992) (finding no takings claim where plaintiff's receipt of benefits was temporarily delayed and the state provided an adequate post-deprivation remedy); *Schroeder v. City of Chic.*, 927 F.2d 957, 959 (7th Cir. 1991) (finding no takings claim where approval for benefits was delayed but plaintiff received full benefit thereafter). Similarly, a plaintiff cannot seek just compensation for loss of an opportunity. *See PVM Redwood Co. v. United States*, 686 F.2d 1327 (9th Cir. 1982) (frustration of effort to exploit business opportunity is not compensable under the Fifth Amendment); *see also Guggenheim v. City of Goleta*, 638 F.3d 1111, 1121 (9th Cir. 2010) ("The idea, after all, of the constitutional protection we enjoy in the security of our property against confiscation is to protect the property we have, not the property we dream of getting.").

The Takings Clause also requires that the government pay "just compensation" for taking property "for public use." U.S. Const. Amend. v. In a traditional takings case, the court relies on the "rational relationship" test to ensure that "a state's exercise of eminent domain power is 'rationally related to a conceivable public purpose.'" *Daniels v. Area Plan Comm'n*, 306

9

F.3d 445, 460 (7th Cir. 2002) (quoting *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984)). The Supreme Court has held that "the 'public use' requirement is thus coterminous with the scope of a sovereign's police powers." *Id.* (quoting *Midkiff*, 467 U.S. at 241). "Regulations enacted pursuant to the police power must be substantially related to the advancement of the public health, safety, morals, or general welfare." *Id.* at 464 (citing *Vill. of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926)). Moreover, courts narrowly review legislative determinations of public use, only rejecting them if "'palpably without reasonable foundation.'" *Id.* at 461 (quoting *Midkiff*, 467 U.S. at 241). The Seventh Circuit declined to provide such deference to non-legislative decisions. *Id.* Implicit in this analysis is the requirement of intent -- the state must tie the alleged taking to the accomplishment of some public purpose. *See Sun Oil Co. v. United States*, 572 F.2d 786, 818 (Cl. Ct. 1978).

### C. Disturbing the Dane County Circuit Court

Finally, assuming that plaintiff's takings claim were ripe, he would only be "entitled to be put in as good a position pecuniarily as if his property had not been taken" -- to "be made whole" -- but would "not be entitled to more." *Olson v. United States*, 292 U.S. 246, 255 (1934). The typical compensation for a government taking is monetary; equitable relief is only available when either the government took property for private use or when it is possible to mount a facial challenge to legislative action permitting the taking. *Sorrentino v. Godinez*, 777 F.3d 410, 414 (7th Cir. 2015) (citing *Peters v. Vill. of Clifton*, 498 F.3d 727, 732 (7th Cir. 2007)) (affirming dismissal of prisoners' takings claims). While plaintiff is seeking some monetary compensation (*see* Pl.'s Opening Br. (dkt. #25) 22-23), he is also seeking equitable relief, the requests for which invite this court to review the Dane County Circuit Court's actions in *Cleven*

10

*v. City of Madison*, No. 2015-CV-001520 or to preempt that court's action in *Gersbach v. City of Madison*, No. 2016-CV-1269. In either case, doing so would be inappropriate. *See Tyrer v. City of S. Beloit*, 456 F.3d 744 (7th Cir. 2006) (affirming district court's abstention under *Colorado River* deference); *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674 (7th Cir. 2010) (affirming district court's dismissal on the grounds of "equity, comity, and federalism" that underlie *Younger* abstention).

Plaintiff asks the court to "find that the City is responsible for paying th[e] costs [related to Cleven's mandamus action]." (Pl.'s Opening Br. (dkt. #25) 23.) However, the issue of costs and fees was already addressed by the Dane County Circuit Court in that same action. (*See Cleven* Docket (dkt. #54-13) 3 ("The court orders that the attorney fees are awarded in the stat[utory] amount of $500 and costs of $251.90 are awarded as well. . . . The motion for atty's fees under Wis Stat[.]802.05 is denied.").) For this court to grant such relief would in effect be to review and (possibly) revise that court's conclusion. The only federal court permitted to review state court judgments is the Supreme Court. *See Lennon v. City of Carmel, Ind.*, 865 F.3d 503, 506 (7th Cir. 2017) ("One situation raising a red flag occurs when a section 1983 complainant appears to be seeking review of a state-court judgment. That is a power that has not, in general, been conferred on the lower federal courts; only the Supreme Court has it, and its review is limited to questions of federal law.").

Plaintiff also encourages this court to "to enter an order requiring the City to pay the interest and enjoin it from taking any further action to collect the interest from Cleven." (Pl.'s Opening Br. (dkt. #25) 22.) However, doing so would also inappropriately preempt the pending state court action in *Gersbach*, where the entire dispute is about who is responsible for paying the employee contribution and accumulated interest, as well as the amount due. If this

11

court were to determine that the City had to pay the interest, or even just required the City to not attempt to collect from plaintiff, this would similarly pluck the issue out of the capable hands of the Dane County Circuit Court in the first instance. The analysis is the same with regards to: his request for an order requiring the City to compensate plaintiff "for the fees and costs he has incurred defending the actions commenced by the City to collect the interest"; and his request that if he is ordered to pay the employee contribution he should only have to pay that amount lessened by the amount of taxes he paid on his income. (*See id.* at 22, 31-32.) For all these reasons, the court declines plaintiff's invitation to review or mold the Dane County Circuit Court's actions.

## II. Procedural Due Process Claim

Unlike plaintiff's takings claim, his procedural due process claim is ripe. In addressing a procedural due process claim, a court must engage in a two-step analysis: (1) determine if the plaintiff was deprived of a protected interest; and if so, (2) determine the process due. *Doherty v. City of Chic.*, 75 F.3d 318, 322 (7th Cir. 1996); *Porter v. DiBlasio*, 93 F.3d 301, 305 (7th Cir. 1996). Likewise, it is not enough "to have and lose an entitlement" -- that "establishes only that a deprivation of property has taken place." *Ellis v. Sheahan*, 412 F.3d 754, 756 (7th Cir. 2005).

Protected interests can include vested property rights. *Porter*, 93 F.3d at 305. Property rights are not defined by the Constitution, rather they are defined by state or federal law. *See Hussey v. Milwaukee County*, 740 F.3d 1139, 1142-43 (7th Cir. 2014). Notably, "[v]iewed functionally, property is what is securely and durably yours under . . . law, as distinct from

what you hold subject to so many conditions as to make your interest meager, transitory, or uncertain." *Id.* at 1142 (quoting *Reed v. Vill. of Shorewood*, 704 F.2d 943, 948 (7th Cir. 1983)).

While the touchstone of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner," due process is flexible depending on the circumstances. *Doherty*, 75 F.3d at 323 (internal citations omitted). Due process does not always require a pre-deprivation hearing, such as where "as a practical matter, [post-deprivation remedies] are the only remedies that the state can be expected to provide." *Id.* (internal citations omitted). For example, "'[a]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the Due Process Clause if a meaningful postdeprivation remedy for the loss is available.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). This requires a plaintiff to either use the state remedies or show that the state remedies are inadequate. *Johnson v. Thompson-Smith*, 203 F. Supp. 3d 895, 306 (N.D. Ill. 2016) *appeal docketed*, case Nos. 16-2495, 16-3255, 16-3559, 16-3876 (7th Cir.); *Doherty*, 75 F.3d at 323 (citations omitted); *see also Estate of Himelstein v. City of Fort Wayne*, 898 F.2d 573, 577 (7th Cir. 1990) (dismissing due process claim because plaintiffs failed to pursue state compensation procedures).

Assuming that plaintiff had a protected interest in his participation in the WRS, his procedural due process rights were not violated. While plaintiff asserts that he was entitled to a pre-deprivation hearing (Pl.'s Opening Br. (dkt. #25) 23-26), that simply is not the case because he has access to adequate post-deprivation procedures. *See Ellis*, 412 F.3d at 758. Specifically, plaintiff received -- and is receiving -- adequate process in the state court. *See id.* at 756 ("[Plaintiff] had and indeed still has adequate procedural routes by which to obtain such a hearing."); *Schroeder v. City of Chic.*, 927 F.2d 957, 960-61 (7th Cir. 1991) (no procedural

due process violation because plaintiff had a right to a hearing and to obtain a mandamus if the hearing was delayed; noting that plaintiff could have sought hearing sooner). Plaintiff sued the City and Defendant Schmiedicke in June 2015, resulting in an order requiring the City and Defendant Schmiedicke "immediately report" Cleven's hours and wages to the WRS. (*Cleven* Docket (dkt. #54-13) 1, 7; Defs.' Resp. to Pl.'s Proposed Findings of Fact (dkt. #43) ¶ 32.) In that action, defendants asserted a counterclaim against plaintiff, which was then dismissed without prejudice. (*See Cleven* Docket (dkt. #54-13) 9, 5). The City brought its claim against plaintiff in *Gersbach v. City of Madison*. (*See Gersbach* Docket (dkt. #54-14) 7.) As explained above, the *Gersbach* plaintiffs, defendants, and third-party defendant (Cleven) dispute liability for the employee contributions to the WRS and the associated interest and there currently are cross motions for summary judgment pending in the Dane County Circuit Court on that very issue. There is no reason to believe that the state court will not address who is responsible for the employee contribution and interest, thus the state process adequately protects Cleven's due process rights.

### III. Plaintiff's Claim Raises Comity Concerns Militating towards Abstention

Even if plaintiff's remaining takings claim were ripe, there is an independent basis for the court to dismiss, or at least to stay, this action. While abstention is the exception, not the rule, under extraordinary circumstances, a district court may decline or postpone its exercise of jurisdiction. *Tyrer v. City of S. Beloit*, 456 F.3d 744, 751 (7th Cir. 2006) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)). A court deciding whether to stay under the *Colorado River* doctrine must first determine if the federal and state proceedings are parallel. *Id.* In examining the state and federal proceedings, a court should

look at "whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues," *id.* at 752 (citing *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004)), so that "a 'suit is parallel when substantially the same parties are contemporaneously litigating substantially the same issues,'" *id.* (quoting *Interstate Material Corp. v. City of Chic.*, 847 F.2d 1285, 1288 (7th Cir. 1988)). "'[F]ormal symmetry between the two actions'" is not required. *Id.* (quoting *Clark*, 376 F.3d at 686).

If the suits are parallel, then the court must consider the following factors to determine if "exceptional circumstances" are present:

> 1) whether the state has assumed jurisdiction over property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.

*Id.* at 751, 754. None of these factors is determinative, although there is a "'general presumption against abstention,'" *id.* (quoting *AXA Corporate Solutions v. Underwriters Reins. Corp.*, 347 F.3d 272, 278 (7th Cir. 2003)), and "the existence of federal question typically weighs heavily against abstention," *Harper v. Vill. of Sauget*, CIVIL NO. 05-397-WDS, 2007 U.S. Dist. LEXIS 20482, at *8 (S.D. Ill. Mar. 21, 2007). Even so, where several factors strongly support abstention, it is within the district court's discretion to do so. *See Tyrer*, 456 F.3d at 755.

As previously discussed, the ongoing proceedings in *Gersbach* are, in fact, parallel with our proceedings here. The dispute in *Gersbach*, centering on the disputed responsibility for the employee contribution and interest, arises from the same facts, raises similar factual and legal

15

issues, and involves the same parties (plaintiff, the City and one of its officers). While plaintiff brings federal constitutional claims here, those claims partially derive from and encompass arguments set forth in *Gersbach*.

Several other factors weigh in favor of abstention as well. For instance, the danger of piecemeal litigation hangs heavily over this case. *See id.* at 756 ("[T]he danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority. . . . [A]llowing the two suits to proceed concurrently would waste the parties' resources, risk duplicative rulings and reward a strategic gamesmanship that has no place in a dual system of federal and state courts."). Both courts have been invited to rule on who must pay the employee contribution and interest into the WRS; contradictory rulings would undermine our judicial system and cause confusion. Similarly, the determination of financial responsibility will turn on state law, with which the state court has more experience and familiarity. Additionally, while plaintiff was added as a third-party defendant to *Gersbach* after this suit was filed in the district court, the state court proceedings began before this suit was filed. (*Compare Cleven* Docket (dkt. #54-13) 1 (filed June 9, 2015) and *Gersbach* Docket (dkt. #54-14) at 1 (filed May 11, 2016) *with* Complaint (dkt. #1) (filed June 16, 2016).) Finally, even though plaintiff does not allege his constitutional claims in the state court, the state-court action is likely to inform and impact his rights.

On the other hand, there is no argument that the federal forum is inconvenient. The federal and state courts are separated by a few blocks in the City of Madison. The proceedings are procedurally similarly situated, with both courts considering motions for summary judgment.

Even if the requirement of exceptional circumstances under *Colorado River* were not present, abstention would be appropriate here in light of *Younger v. Harris*, 401 U.S. 37 (1971), which is based on "principles of equity, comity, and federalism" and has been applied in civil suits. *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 676, 678 (7th Cir. 2010) (requiring district court to abstain, leaving dispute to be resolved by state courts). "The *Younger* doctrine requires federal courts to abstain from taking jurisdiction over federal constitutional claims that seek to interfere with or interrupt ongoing state proceedings." *Id.* at 677 (citing *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007)). As to civil cases, *Younger* "extends only to a federal suit filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government." *Id.* at 679 (internal citations omitted). Thus, a stay may be appropriate when a state judicial or administrative action is pending against the federal plaintiff where the state trying to "enforce the contested law in that proceeding." *Id.* (quoting *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 665 (7th Cir. 2007)).

Since plaintiff has already been added as a third-party defendant in *Gersbach*, and the City is seeking to compel payment from him, a state judicial proceeding is already pending. The State of Wisconsin has an important state interest in the functioning, health and solvency of the WRS. Moreover, determining responsibility for the disputed employee contribution and interest will turn on state law, making federal court intrusion inappropriate in light of the important state interest at issue and comity. While it does not appear that plaintiff asserted his federal constitutional claims before the Dane County Circuit Court in *Gersbach*, this court should assume that the state court will provide an adequate remedy in absence of

17

"'unambiguous authority to the contrary.'" *Id.* at 680 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)). Thus, the state court will provide plaintiff an adequate forum to raise his federal claims.

While the "Supreme Court has treated the distinction between stay and dismissal as one without a difference," *Triumvera Homeowners' Ass'n v. Continental Cablevision*, No. 93 C 3117, 1994 U.S. Dist. LEXIS 488, at *26 (N.D. Ill. Jan. 21, 1994) (citing *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)), the Seventh Circuit differentiates between abstention methods: dismissal is appropriate under *Younger*, while issuing a stay is appropriate under *Colorado River*, *id.* at *25 (internal citations omitted). As such, even if plaintiff had a ripe takings claim, this court would stay proceedings until the state-court proceedings conclude.

ORDER

IT IS ORDERED that:

1. Defendants' motion for summary judgment (dkt. #20) is GRANTED IN PART as to plaintiff's claims against the individual defendants and as to plaintiff's due process claims.

2. Plaintiff's motion for partial summary judgment (dkt. #24) is DENIED.

3. The remaining claim is DISMISSED on ripeness grounds.

4. The court clerk is DIRECTED to close this case.

Entered this 13th day of October, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge